UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>R&R Auction Company, LLC</u>

    **v.**                                          Case No. 15-cv-199-PB
                                               Opinion No. 2016 DNH 040
<u>Michael Johnson</u>

<u>**MEMORANDUM AND ORDER**</u>

    This lawsuit is the latest installment in an ongoing
dispute between R&R Auction Company, LLC, a New Hampshire-based
auction house, and Michael Johnson, a California resident.
After bidding in a number of the company's auctions between 2005
and 2011, Johnson complained that items he had acquired through
R&R Auction were inauthentic.  He filed suit against R&R Auction
in 2012 in California state court.

    After years of increasingly hostile litigation in
California, R&R Auction brought this action in 2015, alleging
that Johnson has acted improperly in the course of prosecuting
his California lawsuit.  R&R Auction complains, among other
things, that Johnson created several websites that incorporate
R&R Auction's name, and posted information online that has
harmed R&R Auction's reputation.  R&R Auction's complaint
includes a raft of federal and state-law claims.  Johnson has
responded with a motion to dismiss for lack of personal
jurisdiction.

## I.   BACKGROUND

R&R Auction is a limited liability company formed under New Hampshire law, with its principal place of business in Amherst, New Hampshire.  It hosts auctions via a print catalog and its website, rrauction.com.  Johnson is a California resident.

From 2003 until 2011, R&R Auction mailed, at Johnson's request, auction catalogs to Johnson in California.  From 2005 until 2011, Johnson participated in auctions through the company's website, acquiring more than eighty items in thirty-three auctions.  Johnson also consigned for sale more than twenty items through R&R Auction, and sold items in six auctions.

Both R&R Auction's catalog and website describe the terms and conditions that must be met to participate in an auction. The catalog provides that "[p]lacing a bid in this auction constitutes full acceptance of all of the conditions, bidding rules, and terms of sale presented [in the catalog]," and similar language appears on the website.  Doc. No. 1 at 8. These terms include a "Guarantees" provision regarding the authenticity of items acquired through R&R Auction.  According to this provision, "[t]he buyer's only remedy under this

guarantee is the cancellation of the sale [of the inauthentic item] and the refund of the purchase price."  Id.

In 2011, Johnson began to claim that items he had acquired through R&R Auction were inauthentic.  When he and R&R Auction were unable to reach an amicable resolution, Johnson filed suit in 2012 in Santa Barbara County Superior Court in California. Johnson alleged that R&R Auction had violated California law by auctioning (reportedly) knockoff items.

While the California lawsuit was ongoing, Johnson registered several Internet domain names incorporating the term "R&R Auction," or the names of individuals associated with R&R Auction.  I describe these sites collectively as "the Litigation Website."[1]  Doc. No. 1 at 17.  The Litigation Website's stated purpose is to "provide a venue in which interested parties may learn more about this case which is currently in litigation in Santa Barbara Superior Court."  Id.  To that end, the website includes contact information for Johnson's attorneys, and allows visitors to submit a "message regarding this potential lawsuit." Id.  The website also provides links to Twitter, Facebook, and

---

[1]  Those websites include: rrauctionlawsuit.com, rrauction.biz; rrauctionauthentication.com; rrauctionautographauthentication.com; rrauctionclassactionlawsuit.com; rrauctioncomplaint.com; rrauctionfraud.com; rrauctionguarantee.com; rrauctions.net; bobseaton.com; triciaeaton.com; bobbylivingston.com; billwhiterrauction.com.

YouTube pages, reportedly operated by Johnson, that were created in connection with the California lawsuit.  The website is accessible in New Hampshire, and has been viewed by at least one New Hampshire resident.  Doc. No. 15 at 3.

Johnson began posting information about his lawsuit on the Litigation Website and other websites.  In September 2014, he made several posts on complaintsboard.com, stating that a class action lawsuit had been filed "against RR Auction located in Amherst, New Hampshire," and inviting "potential class member[s]" to visit the Litigation Website.  Doc. No. 1 at 12-13.  In January and February 2015, Johnson posted video depositions taken of several R&R Auction employees.

In March 2015, Johnson posted to the Litigation Website the so-called "Alleged Burris Affidavit," a 2008 affidavit purportedly authored by Karen Burris, a former R&R Auction employee.  Id. at 20-26.  Burris was R&R Auction's office manager from 2001 until 2008, when R&R Auction accused her of stealing more than $400,000 from the company.  On April 2, 2008, the day after R&R Auction forwarded information about the missing funds to law enforcement, Burris committed suicide.  Id. at 21.  Several months later, R&R Auction reached a confidential settlement and non-disclosure agreement with Burris's estate, her late husband, William Burris, and Mr. Burris's company.  Id. In February 2015, Johnson's counsel subpoenaed Mr. Burris, then

living in Montana, for "[a]ll writings about or concerning R&R Auction Company" in Mr. Burris's possession.  <u>Id.</u> at 22. Johnson's counsel then interviewed Mr. Burris, without notifying R&R Auction.  When Mr. Burris turned over the "Alleged Burris Affidavit" to Johnson, Johnson filed that document in court, and posted it on his website.

These various postings led to unwanted negative attention for R&R Auction.  Members of the press wrote articles about the California litigation, often referring to materials posted on the Litigation Website.  <u>Id.</u> at 36-37.  Bob Sanders from the New Hampshire Business Review, for example, contacted R&R Auction for comment, noting that he currently "only [had] the plaintiffs side" but had "the depositions on the plaintiffs website."  <u>Id.</u> at 36.  R&R Auction was criticized on social media, and certain past, present, and potential R&R Auction customers have contacted the company to express concern about Johnson's lawsuit.  Some ended their relationship with the company.

Thus, after years of increasingly bitter litigation in California, R&R Auction filed this suit in New Hampshire.  In its fifteen-count complaint, R&R Auction alleges that "[a]s a direct and proximate result of the California Litigation, the Litigation Website, and Mr. Johnson's other conduct, RR Auction has suffered a material decline in business."  <u>Id.</u> at 44.

## II.  **STANDARD OF REVIEW**

When a defendant challenges the court's personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing a basis for asserting jurisdiction.  See Mass. Sch. Of Law at Andover, Inc. v. Am. Bar. Ass'n., 142 F.3d 26, 34 (1st Cir. 1998).  Because I did not hold an evidentiary hearing in this case, R&R Auction need only make a prima facie showing of jurisdiction.  See Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010).

To meet this standard, R&R Auction must "adduce evidence of specific facts" that support its jurisdictional claim.  Foster-Miller, Inc. v. Babcock & Wilson Can., 46 F.3d 138, 145 (1st Cir. 1995).  I accept "specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim."  Mass. Sch. Of Law, 142 F.3d at 34.  I need not, however, "credit conclusory allegations or draw farfetched inferences."  Id. (citation omitted).  I may also consider uncontested facts submitted by the defendant.  Id.  In conducting this analysis, I assess "whether the facts duly proffered, [when] fully credited, support the exercise of personal jurisdiction."  Alers-Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 83 (1st Cir. 1997).

### III.   ANALYSIS

#### A.   Legal Framework

Personal jurisdiction over an out-of-state defendant turns on both (1) constitutionally sufficient "minimum contacts," and (2) service of process in accordance with Federal Rule of Civil Procedure 4(k).  For claims based on federal law, the Fifth Amendment's due process clause sets the constitutional limits of the court's jurisdiction.  United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001).  The Fifth Amendment demands only that the defendant have sufficient "minimum contacts" with the United States as a whole.  Id.  State law claims, however, are governed by the Fourteenth Amendment's due process clause, which requires that the defendant have sufficient contacts with the particular state in which the court sits.  Id.  Here, R&R Auction has brought both federal and state law claims.

Federal Rule of Civil Procedure 4(k) authorizes extraterritorial service of process either when allowed by a federal statute, or when "permitted by the law of the state in which the district court sits."  United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1086 (1st Cir. 1992) (internal quotation marks omitted); Fed. R. Civ. P. 4(k).  In this case, R&R Auction has not identified a federal statute authorizing it to serve Johnson in New Hampshire.  See

Sarah's Hat Boxes, L.L.C. v. Patch Me Up, L.L.C., 2013 DNH 058, 9 n.4 (noting that the Lanham Act does not allow nationwide service of process).  Instead, it relies exclusively on New Hampshire's long-arm statute.  New Hampshire's long-arm statute, in turn, is coextensive with the Fourteenth Amendment.  See Presby Patent Trust v. Infiltrator Sys., Inc., 2015 DNH 111, 2-3.  Therefore, in order to satisfy Rule 4, R&R Auction must satisfy the Fourteenth Amendment's due process clause with respect to both its state and federal claims.  Situation Management Systems v. ASP Consulting Grp., 2006 DNH 092, 5.

The Fourteenth Amendment requires that a defendant have sufficient "minimum contacts" with the forum such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation and punctuation omitted).  This "minimum contacts" inquiry is necessarily fact-specific, requiring "an individualized assessment and factual analysis of the precise mix of contacts that characterize each case." Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994).  A defendant cannot be subjected to personal jurisdiction based upon merely "random, fortuitous, or attenuated contacts" with the forum. Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985) (internal punctuation omitted).  Instead, there must be some "act by which the defendant

8

purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id.

Personal jurisdiction comes in two varieties – general and specific – depending upon the nature of the defendant's contacts with the forum. Sarah's Hat Boxes, 2013 DNH 058, 11.  General jurisdiction exists where the defendant has engaged in "continuous and systematic" activity in the forum "sufficient to establish jurisdiction in that state over all matters including matters unrelated to the defendant's contacts in the forum state." Id. (citing Northern Laminate Sales, Inc. v. David, 403 F.3d 14, 24 (1st Cir. 2005).  Specific jurisdiction "exists only when the cause of action arises from or relates to the defendant's contacts with the forum state." Id.  R&R Auction asserts that specific personal jurisdiction exists here.

The First Circuit applies a three-part test to decide whether specific jurisdiction exists: (1) whether the claims arise out of, or are related to, the defendant's forum-related activities ("relatedness"), (2) whether the defendant has purposefully availed himself of the protections and benefits of the forum state's laws ("purposeful availment"), and (3) whether the exercise of jurisdiction is reasonable under the circumstances (the "gestalt factors"). Phillips v. Prairie Eye Ctr., 530 F.3d 22, 27 (1st Cir. 2008).  The plaintiff must

satisfy each of these three requirements.  Medicus Radiology, LLC v. Nortek Med. Staffing, Inc., 2011 DNH 001, 7.

**B.    <u>Application</u>**

Personal jurisdiction must be assessed separately with regard to each claim.  Sarah's Hat Boxes, 2013 DNH 058, 12.  For the sake of brevity, however, I group R&R Auction's fifteen counts into four categories: (1) abusive litigation practices claims, (2) Lanham Act and state-law claims based upon Johnson's unauthorized use of the term "R&R Auction" in connection with his Litigation Website; (3) intentional interference with existing and prospective contractual relations claims, and (4) claims related to Johnson's allegedly defamatory statements about R&R Auction.  I apply the First Circuit's three-pronged inquiry to each of these sets of claims in turn.

As I explain below, R&R Auction's first two categories of claims – the litigation abuse and the Litigation Website claims – are doomed because they fail to satisfy the relatedness requirement of the personal jurisdiction test.  R&R Auction's third and fourth sets of claims – the intentional interference and defamation claims – are, however, premised on facts that minimally satisfy the relatedness and purposeful availment requirements.  Nonetheless, given the weakness of R&R Auction's showing with respect to these two requirements, and the totality of the circumstances of this case, I conclude that exercising

10

jurisdiction any of over Johnson's claims would be unreasonable.
See Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 210 (1st
Cir. 1994) ("the weaker the plaintiff's showing on the first two
prongs . . . the less a defendant need show in terms of
unreasonableness to defeat jurisdiction").

    1.   Abusive Litigation Tactics – Counts VII, XIV

R&R Auction alleges that Johnson has engaged in certain
"abusive litigation practices" that are actionable under Section
358-A:2 of the New Hampshire Revised Statutes.  It also brings
an abuse of process claim, essentially asserting that, in order
to injure R&R Auction, Johnson improperly required Mr. Burris to
produce documents by subpoena.  Doc. No. 1 at 60.

R&R Auction has not satisfied the relatedness requirement
as to either claim.  A plaintiff generally cannot meet the
relatedness requirement merely by showing that it suffered in-
forum injury from the defendant's out-of-state misconduct.
Swiss Am. Bank, 274 F.3d at 623; Sawtelle v. Farrell, 70 F.3d
1381, 1390-91 (1st Cir. 1995).  Instead, the plaintiff must
point to some forum-related actions by the defendant that are
associated with its claims.  Mass. Sch. of Law, 142 F.3d at 35.

R&R Auction has not done so here.[2]  R&R Auction's abuse of
process claim, for example, is based upon a contention that

---

[2] In general, R&R Auction's briefing makes it difficult to
determine which of Johnson's purported contacts with New

Johnson (a California resident), subpoenaed Mr. Burris (then living in Montana), in connection with a lawsuit filed in California state court.  Likewise, the only apparent connection between R&R Auction's Section 358-A:2 claim and New Hampshire is that R&R Auction suffered the effects of Johnson's alleged misconduct in its home state.  Because that in-forum injury, standing alone, is insufficient to meet the relatedness requirement, these claims fail at the first step of the jurisdictional analysis.[3]

   2.   Litigation Website Claims - Counts I-IV, XIV

   R&R Auction's next set of claims includes four Lanham Act counts and one New Hampshire misappropriation claim, all of

---

Hampshire arguably satisfy the relatedness requirement.  Indeed, after noting that "[t]he first task in a relatedness inquiry involves identifying the alleged contacts," R&R Auction declines to do so.  Doc. No. 15 at 7.  R&R Auction instead states that it "has set forth the relevant contacts in the Facts section supra, as well as in the supporting declarations submitted herewith and other prior filings . . . and will not repeat them here."  Id.

[3]  R&R Auction argues that it has met its burden because "[t]he restrictions imposed on Mr. Burris pursuant to [the settlement agreement], and the New Hampshire-related content of the materials concerning R&R Auction provided by Mr. Burris to Mr. Johnson, are central to [the abuse of process] claim."  Doc. No. 15 at 11.  As I understand this argument, R&R Auction seems to contend that the relatedness requirement is satisfied because the settlement agreement at issue is "New Hampshire-based," and because Mr. Burris produced "New Hampshire-related" materials in response to the offending subpoena.  Because, however, R&R Auction has failed to develop this argument properly, I decline to entertain it.

which are based upon Johnson's unauthorized use of the term "R&R
Auction" on the Litigation Website.  To establish that these
claims relate to Johnson's contacts with New Hampshire, R&R
Auction points out that the website: (1) is accessible in New
Hampshire, (2) injures R&R Auction in New Hampshire, and (3) has
been viewed by at least one New Hampshire resident.  Doc. No. 1
at 2-3.  Following the First Circuit's recent decision in A
Corp. v. All American Plumbing, 2016 WL 325102 (1st Cir. Jan.
27, 2016), these facts are inadequate to meet R&R Auction's
burden.

In that case, A Corp., a Massachusetts company, brought a
trademark infringement action against All American Plumbing, an
Arizona corporation, in federal court in Massachusetts.  A Corp.
alleged that All American had improperly used A Corp.'s mark on
its website.  2016 WL 325102, at *1.  All American moved to
dismiss for lack of personal jurisdiction, arguing that its
limited contacts with Massachusetts – the availability of the
allegedly infringing website, and the fact that the website
caused injury in the forum – were insufficient.  The District
Court agreed and granted A Corp.'s motion; the First Circuit
affirmed.

In particular, the First Circuit concluded that A Corp. had
not satisfied the relatedness requirement.  According to the
court, A Corp.'s "one and only forum contact - the availability

13

of its website" was inadequate to meet plaintiff's burden.  Id.
at *3.  The court further rejected A Corp.'s reliance on its in-
forum injury from All American's alleged infringement, noting
that "in-forum effects of non-forum activity, standing alone,
[are] insufficient to support personal jurisdiction." Id. at *3
(citing Sawtelle, 70 F.3d at 1390-91); see also Swiss Am. Bank,
274 F.3d at 623 ("[T]he 'effects' test is a gauge for purposeful
availment and is to be applied only after the relatedness prong
has already been satisfied"); Mass. Sch. of Law, 142 F.3d at 36
("We have wrestled before with this issue of whether the in-
forum effects of extra-forum activities suffice to constitute
minimum contacts and have found in the negative").

In this case, R&R Auction presents effectively the same
argument that the First Circuit rejected in A Corp..  As in A
Corp., R&R Auction principally argues that it has satisfied the
relatedness requirement because Johnson's infringing website is
accessible in New Hampshire, and causes injury in New Hampshire.
Yet, as A Corp. makes plain, these facts alone are insufficient
to meet R&R Auction's burden. 2016 WL 325102, at *3.  R&R
Auction does note that at least one New Hampshire resident has
visited the website, a fact that arguably distinguishes this
case from A Corp.  It has not, however, proffered evidence, for
example, that the website was designed to target New Hampshire
residents (rather than consumers generally), or that Johnson

14

provided any services to New Hampshire consumers through the
site.  Cf. Sarah's Hat Boxes, 2013 DNH 058, 16-17 (the
relatedness requirement is met with respect to a Lanham Act
claim where the defendant sold infringing goods via its website,
and because "by listing cities and towns in New Hampshire, the .
. . website is designed to appear in New Hampshire consumers'
search results").  Under these circumstances, the fact that at
least one New Hampshire resident has viewed the Litigation
Website does not change the outcome.  Accordingly, R&R Auction's
Website claims falter at the first step of the analysis.

    3.   <u>Intentional Interference Claims – Counts X-XII</u>

    R&R Auction next alleges that Johnson intentionally
interfered with its existing contractual relations with bidders
and consignors, and with its potential relations with
prospective bidders and consignors.  It also claims that Johnson
intentionally interfered with the company's settlement and
nondisclosure agreement with Mr. Burris.  R&R Auction argues
that it has satisfied the relatedness requirement as to these
claims because (1) it suffered the effects of Johnson's alleged
interference in New Hampshire, and (2) the contracts at issue
were governed by New Hampshire law.  Doc. No. 15 at 2-3, 10.  In
particular, R&R Auction points to its agreement with Mr. Burris,
which "explicitly states that it is to be construed and enforced
in accordance with and governed by the laws of the State of New

Hampshire."   Doc. No. 15-14 at 3.   Pursuant to the First
Circuit's decision in Astro-Med v. Nihon Kohden American, 591
F.3d 1 (1st Cir. 2009), these facts are minimally sufficient to
satisfy the relatedness requirement.

   In Astro-Med, the First Circuit considered whether specific
jurisdiction existed over an out-of-state defendant who had
allegedly interfered with a forum-based contract. 591 F.3d at
9-10.   In that case, Astro-Med, a Rhode Island corporation,
entered into a non-competition agreement with its employee.   The
agreement contained choice-of-law and forum-selection
provisions, which specified that the agreement would be governed
by Rhode Island law, and required the employee to consent to
litigate in Rhode Island should any agreement-related dispute
arise.   Id. at 6.   Several years later, the employee applied for
a position with the defendant, a California company that
competed with Astro-Med.   Before offering the employee a job,
the defendant "became aware of the Astro-Med Employment
Agreement with [the employee] and referred the contract to
counsel for review."   Id. at 7.   The defendant decided to hire
the employee even though its counsel advised "that there was
some minimal risk in hiring" the employee.   Id.   Astro-Med then
brought suit in federal court in Rhode Island, alleging that the
defendant had intentionally interfered with its contractual
relations with the employee.   The defendant moved to dismiss for

16

lack of personal jurisdiction.  The district court denied the
motion and the defendants appealed after an adverse jury
verdict.

Relevant here, the First Circuit concluded in Astro-Med
that the plaintiff had satisfied the relatedness requirement.
As the court noted, when the defendant allegedly interfered with
Astro-Med's contractual relations, it knew (1) that Astro-Med
was located in Rhode Island, (2) that the employee entered into
the agreement in Rhode Island, (3) that the agreement specified
that it was governed by Rhode Island law, (4) that the employee
had consented to litigating any disputes related to the contract
in Rhode Island, and (5) that it was exposing itself to some
risk by hiring the employee.  In total, the court reasoned that
these facts were sufficient to meet the relatedness requirement.

In light of Astro-Med, R&R Auction has made a minimally
sufficient relatedness showing here.  R&R Auction's settlement
and non-disclosure agreement with Mr. Burris provided "that it
[was] to be construed and enforced in accordance with and
governed by the laws of the State of New Hampshire."  Doc. No.
15-14 at 3.  When Johnson allegedly interfered with this
contractual relationship, he "knew about" this agreement, Doc.
No. 1 at 22; knew that R&R Auction was located in New Hampshire;
and presumably recognized – based upon R&R Auction's vehement
opposition, id. at 21-23 – that he was exposing himself to some

17

risk by subpoenaing Mr. Burris.  Yet, Johnson contacted Mr.

Burris anyway.  For essentially the same reasons as in Astro-

Med, then, these claims survive the first requirement of the

specific jurisdiction analysis.  The same facts are also

minimally sufficient to meet the purposeful availment

requirement, because Johnson should have reasonably foreseen

that his conduct might cause injury in New Hampshire.  See

Medicus Radiology, 2011 DNH 001, 12-14.  These claims therefore

survive both the relatedness and purposeful availment

requirements.

    4.   False or Misleading Statements – Counts VI-VIII,
        XIII, XIV

    R&R Auction's final set of claims – unfair competition,

commercial disparagement, and false light – result from

Johnson's various allegedly false and misleading statements

about R&R Auction.  R&R Auction contends that it has met the

relatedness requirement as to these claims because: (1)

Johnson's "introduced his communications into the State," and

(2) R&R Auction has "felt" the effects of those remarks "within

New Hampshire."  Doc. No. 15 at 10-11.

    As explained above, a plaintiff generally cannot meet the

relatedness requirement merely by showing in-forum injury from

the defendant's out-of-state misconduct.  R&R Auction must

instead point to forum-related actions by Johnson connected with

these claims.  Mass. Sch. of Law, 142 F.3d at 35.  To that end,
R&R Auction argues that Johnson "introduced his communications
into" New Hampshire, apparently by speaking with a New Hampshire
Business Review reporter.[4]  Doc. Nos. 15 at 10-11; 29 at 3-4.

    In early 2015, Johnson discussed the California litigation
with Bob Sanders, a *New Hampshire Business Review* ("NHBR")
reporter, and allegedly made a defamatory statement about R&R
Auction.[5]  Apparently following that communication, Sanders

---

[4] To the extent that R&R Auction relies on other individuals'
negative internet comments about R&R Auction, or other
journalists' requests for comment following Johnson's posts, I
reject his argument.  Absent some evidence connecting Johnson to
those communications, they cannot give rise to jurisdiction over
him.  See Burger King, 471 U.S. at 474 ("The unilateral activity
of those who claim some relationship with a nonresident
defendant cannot satisfy the requirement of contact with the
forum State."); Helicopteros Nacionales de Colombia, S.A. v.
Hall, 466 U.S. 408, 417 (1984) ("[U]nilateral activity of a . .
.  third person is not an appropriate consideration when
determining whether a defendant has sufficient contacts with a
forum [s]tate to justify an assertion of jurisdiction.").

[5] R&R Auction does not affirmatively allege, let alone present
evidence that establishes, that Johnson instigated the
communication with the NHBR reporter.  At most, R&R Auction
hints in a footnote that Johnson may have solicited the call.
See Doc. No. 29 at 3 n.8 (suggesting that the NHBR article may
have been "NHBR's organic idea or the result of a 'tip' from
Johnson's camp").  Although I must accept "specific facts
affirmatively alleged by the plaintiff as true (whether or not
disputed) and construe them in the light most congenial to the
plaintiff's jurisdictional claim," Mass. Sch. Of Law, 142 F.3d
at 34, the "burden of proving jurisdictional facts rests on the
shoulders of the party who seeks to invoke the court's
jurisdiction." Ticketmaster, 26 F.3d at 207 n.9.  On that
principle, I assume that Johnson did not initiate the relevant
communication.  Id. (reaching the same conclusion under similar
circumstances).

contacted R&R Auction by email for comment on Johnson's suit, explaining that Sanders "only [had] plaintiffs' side [of the story]," and had "the depositions on the plaintiffs' website," but wanted a quotation "from company officials directly."  Doc. No. 15-13.  Several weeks later, NHBR published an article about the lawsuit, which included quotations from both Johnson and an R&R Auction employee.  Doc. No. 29-2 (NHBR Article).

The First Circuit addressed an analogous situation in Ticketmaster.  There, the defendant, a California resident, made an allegedly defamatory statement about the plaintiff during an unsolicited telephone interview with a *Boston Globe* reporter. Ticketmaster, 26 F.3d at 203.  After the *Globe* published an article that included the defendant's statement, the plaintiff sued in federal court in Massachusetts.  The defendant then moved to dismiss for lack of personal jurisdiction.

Based on Ticketmaster, R&R Auction has met the relatedness requirement.  As in Ticketmaster, R&R Auction alleges that Johnson "knowingly direct[ed] his [allegedly defamatory] comments into the forum state" by speaking with someone he knew to be a New Hampshire-based reporter.  See Ticketmaster, 26 F.3d at 207.  Johnson's contact with the New Hampshire is therefore related to R&R Auction's defamation claims.  These facts also satisfy the purposeful availment requirement, as it was reasonably foreseeable that Johnson's allegedly tortious

statement to an NHBR reporter would cause injury in New
Hampshire.

As the Ticketmaster court explained, however, these facts
are only minimally sufficient.  According to Ticketmaster, "when
the defendant in a defamation action is a journalist's source,
the link between the defendant's conduct and the cause of action
is attenuated by the intervening activities of third parties,
e.g., the reporter, the editor, the media outlet, and that those
intermediaries shape, amplify, and occasionally distort the
original utterance."  Id.  Thus, although Johnson's statement to
the NHBR reporter may have been "a tort in its own right (if
defamatory)," they "inflicted no significant injury, except
insofar as [they] led to republication in the ensuing" article.
Id.  In addition, the purposeful availment showing is weaker in
cases, like this one, where the defendant did not initiate the
communication that led to his allegedly defamatory remark.

In summary, R&R Auction has satisfied the first two
requirements of the jurisdictional analysis with respect to its
intentional interference claims and its false and misleading
statements claims.[6]  For the reasons provided, however, this

---

[6] R&R Auction brings one additional claim, Count IX, which does
not fit neatly into any of the four categories described above.
R&R Auction alleges that it and Johnson "were parties to a
contractual agreement, namely, the terms and conditions
applicable" to the company's auctions.  Doc. No. 1 at 54-55.
Those conditions included the "Guarantees" provision, which

showing is far from overwhelming.  With that in mind, I turn to the third requirement of the specific jurisdiction analysis, and assess whether exercising jurisdiction would be reasonable over any of R&R Auction's claims.

## C.   **Reasonableness**

Exercising jurisdiction over a defendant must be "reasonable."  The reasonableness inquiry consists of five "gestalt factors":

> (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies.

Sawtelle, 70 F.3d at 1394.  The "reasonableness prong . . . evokes a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction."  Ticketmaster, 26 F.3d at 210.  Thus, "[t]he gestalt factors rarely preclude jurisdiction where the

───────────────

provided that a buyer's "only remedy" in the event that he bought an inauthentic good was "cancellation of the sale and the refund of the purchase price."  Id. at 8.  R&R Auction claims that Johnson breached the implied covenant of good faith and fair dealing by declining to comply with that provision, and instead filing suit in California.  Id. at 54-55.  For the sake of argument, I assume that R&R Auction has satisfied the relatedness and purposeful availment requirements as to this claim.

first two prongs have been established, but will often tip
against exercising jurisdiction when the other factors are
weak." GT Solar, Inc. v. Goi, 2009 DNH 156, 25 (internal
citations omitted).

    1.   Defendant's Burden of Appearance

    Although litigating this matter in New Hampshire would
present some burden for Johnson – a California resident who has
reportedly never visited New Hampshire - his circumstances are
not unusual.  See Sawtelle, 70 F.3d at 1395 ("this factor
becomes meaningful only where a party can demonstrate a 'special
or unusual burden'") (punctuation omitted); but see
Ticketmaster, 26 F.3d at 210 (concluding that the burden of
litigating in a distant forum, "and its inevitable concomitant,
great inconvenience, are entitled to substantial weight").  As
the First Circuit has explained, however, the "burden of
appearance" factor is important primarily because "it provides a
mechanism through which courts may guard against harassment."
Ticketmaster, 26 F.3d at 211; see Nowak v. Tak How Investments,
Ltd., 94 F.3d 708, 718 (1st Cir. 1996).  In this case, "the
circumstances . . . suggest that the inconvenience to the
defendant may not be coincidental." Ticketmaster, 26 F.3d at
210-11.

    Since 2012, Johnson and R&R Auction have been engaged in
increasingly unfriendly litigation in California state court, a

lawsuit that R&R Auction has described as "extortion by litigation."  Doc. No. 28-3 at 2.  Virtually all of R&R Auction's claims here flow from Johnson's actions in that lawsuit.  R&R Auction's unfair competition claim, for instance, stems in part from Johnson "making overreaching settlement demands" and "cancelling his deposition numerous times without good cause" in that suit.  Doc. No. 1 at 51-52.  The abuse of process claim is based upon Johnson serving a subpoena in the course of the California lawsuit, id. at 60, while the good faith and fair dealing claim arises from the same events – namely Johnson's refusal to accept a refund for reportedly knockoff items – that gave rise to Johnson's lawsuit in the first place.  Id. at 54-55.  Yet, rather than resolving those grievances through the ongoing suit, or in nearby federal court, R&R Auction filed this action 3,000 miles away.  Given that history, this factor cuts against jurisdiction.

    2.   <u>Interest of the Forum</u>

Because New Hampshire "has a demonstrable interest in obtaining jurisdiction over a defendant who causes tortious injury within its borders," Sawtelle, 70 F.3d at 1395, this factor favors R&R Auction.  This interest is "milder than usual" here, however, in light of two factors.  Ticketmaster, 26 F.3d at 211.  First, New Hampshire's "interest in the litigation *sub judice* is arguably lessened by the doubts surrounding whether

[the] defendant's act can be said to have been committed in the forum." Id.  As explained above, Johnson committed the challenged acts outside of New Hampshire, which diminishes New Hampshire's interest in this suit.  Second, the appearance that R&R Auction may have filed this action, or chosen to file in New Hampshire, to retaliate against Johnson decreases New Hampshire's interest.  Id.  Accordingly, I assign this factor little weight.

### 3.   Plaintiff's Convenience

R&R Auction's "choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." Sawtelle, 70 F.3d at 1395.  R&R Auction is a New Hampshire company, and presumably many of its witnesses are New Hampshire residents.  Yet, virtually all of the relevant events occurred in California, many witnesses are located there, and R&R Auction has already been defending Johnson's closely-related lawsuit in California for several years.  As such, R&R Auction's "*actual* convenience seems to be at best a makeweight in this situation." Ticketmaster, 26 F.3d at 211 (emphasis in original).

### 4.   Administration of Justice

In most cases, the judicial system's interest in obtaining effective resolution to a given suit will not favor either side in a personal jurisdiction dispute.  See PC Connection, Inc. v. Crabtree, 754 F. Supp. 2d 317, 334 (D.N.H. 2010).  In this case,

though, two factors favor Johnson: (1) "the possibility that plaintiff's action might be thought vexatious," Ticketmaster, 26 F.3d at 211; and (2) the likelihood that R&R Auction could resolve some of its claims in the ongoing California litigation before a judge who is already familiar with many of the issues raised.

### 5.   Pertinent Policy Arguments

No additional fundamental social policies counsel for jurisdiction in either New Hampshire or California.  See Ticketmaster, 26 F.3d at 211-12 (placing "no weight on First Amendment values" for purposes of jurisdictional analysis). This factor is therefore neutral.

**D.   Summary**

In conclusion, this case presents a close question as to whether specific jurisdiction exists.  Although R&R Auction has proffered (barely) enough evidence to satisfy the relatedness and purposeful availment requirements as to some of its claims, the reasonableness requirements – and the appearance of possible harassment in particular – cuts strongly against jurisdiction. Therefore, after weighing the gestalt factors with the relative weakness of R&R Auction's showings on the first two requirements, I conclude that R&R Auction has not met its burden of proving personal jurisdiction with respect to any of its

claims.[7]  Because exercising specific jurisdiction under the

facts presented here would be unreasonable, I grant Johnson's

motion to dismiss.[8]


## IV.   CONCLUSION

For the reasons set forth above, defendant's motion to

dismiss for lack of personal jurisdiction (Doc. No. 13) is

granted.  I deny as moot and without prejudice defendant's

motion to dismiss for improper venue, or to transfer venue

(id.), and plaintiff's motion for preliminary injunctive relief

(Doc. No. 2).

SO ORDERED.

/s/ Paul Barbadoro
Paul Barbadoro
United States District Judge

March 2, 2016

---

[7]  Even assuming that R&R Auction had satisfied the relatedness
and purposeful availment requirements as to its first two
categories of claims, I would decline to exercise jurisdiction
over those claims for the same reasons that I decline to
exercise jurisdiction over the remaining claims.

[8]  Because R&R Auction has not carried its burden of proving
jurisdiction, I need not address Johnson's venue argument in
detail.  I note, however, that, even if R&R Auction had proved
personal jurisdiction, it would be appropriate to transfer this
matter to the Central District of California pursuant to 28
U.S.C. § 1404(a).  "Section 1404(a) is intended to place
discretion in the district court to adjudicate motions for
transfer according to an individualized, case-by-case
consideration of convenience and fairness." Astro-Med, 591 F.3d
at 12 (internal punctuation omitted).  For essentially the same
reasons explained with respect to the gestalt factors, above, I
would exercise that discretion here to transfer this matter.

```
cc:   Lawrence P. Murray, Esq.
      Zachary Rush Gates, Esq.
      Timothy John McLaughlin, Esq.
      Matthew M. Clarke, Esq.
```